IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| THE DURHAM WOOD FIRED PIZZA COMPANY LLC doing business as DASHI, et al., | ) | |
| Plaintiffs, | ) | |
| v. | ) | 1:25-CV-492 |
| THE CINCINNATI INSURANCE COMPANY, | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Catherine C. Eagles, Chief District Judge

The plaintiffs, four Durham, North Carolina restaurants, filed suit against the defendant, The Cincinnati Insurance Company, over denials of their insurance claims resulting from losses sustained during the COVID-19 pandemic lockdowns. In *North State Deli, LLC v. Cincinnati Insurance Co.*, 386 N.C. 733, 908 S.E.2d 802 (2024), the North Carolina Supreme Court held that materially identical policies covered such claims as direct physical losses, and the plaintiffs now seek summary judgment in their favor on liability. Cincinnati has not explained to either the plaintiffs or the Court any basis for denying the insurance claims after *North State Deli*, and in the absence of any disputed questions of material fact, summary judgment for the plaintiffs on liability is appropriate. Trial, presently scheduled for October 26, 2026, will be determining damages.

## I. The Undisputed Facts

### A. Requests for Admission

The plaintiffs served requests for admission on Cincinnati on April 15, 2026. Doc. 45-5 at p. 2 ¶ 4. Cincinnati did not respond to them when due, and there is no indication it has responded to them since. Doc. 45-5 at p. 3 ¶ 5; *see* Doc. 53 at 1–2.

"A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter." Fed. R. Civ. P. 36(a)(3). "A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." Fed. R. Civ. P. 36(b). Nothing else appearing, the facts set forth in the requests for admission served by the plaintiffs should be deemed admitted by Cincinnati.

In opposition to the summary judgment motion, Cincinnati contends the parties "discussed these responses and agreed that [Cincinnati] would have additional time to respond to the requests for admission," Doc. 53 at 1, and that the requests are objectionable as exceeding the number authorized by the scheduling order. *Id.* at 2. It maintains that withdrawal or amendment would promote presentation of the merits of the lawsuit and the plaintiffs would not be prejudiced. *Id.* at 6. Finally, it asserted that it was "filing an accompanying Motion to Withdraw Admissions." *Id.* at 3.

But Cincinnati has not filed a motion to withdraw admissions. Nor has it proffered proposed responses to the requests, even after the plaintiffs filed their summary judgment motion relying on those admissions; even assuming there was an open-ended agreement

to allow Cincinnati to defer its responses, that agreement obviously terminated when the plaintiffs filed the summary judgment motion.[1] While it points to responses it made to earlier requests for admission in 2022, those responses do not address critical aspects of the plaintiffs' requests for admissions about events after *North State Deli*. Doc. 53 at 5; *see* Doc. 53-4; Doc. 53-5, Doc. 45-5 at 10–17 ¶¶ 1–60. Finally, Cincinnati has not submitted evidence disputing its admissions about its coverage determinations and communications with the plaintiffs, with the exception of one narrow point. See discussion at 15 (discussing defense evidence related to need for substantiation). Accordingly, the requests for admission are deemed admitted. *See* Fed. R. Civ. P. 36(b). To the extent that Cincinnati's response can be construed as a motion to withdraw admissions,[2] it is denied.

In addition, and in the alternative, the plaintiffs are entitled to summary judgment even without consideration of the admissions. For clarity, the Court will first summarize the undisputed facts apart from the admissions and then will cover additional facts established by the admissions. In the analysis, the Court cites the admissions, to the extent relevant, in supplement to the other evidence in the record.

---

[1] Even under Cincinnati's evidence, it did not ask for an extension until after responses were overdue. Doc. 53-1 ¶ 3. And later, when discovery and summary judgment deadlines were imminent, it continued to rely on this open-ended agreement to defer discovery responses; that inaction was at its own risk, as courts do not delay their consideration of the merits merely because one party has not answered discovery. Scheduling orders are not entered as suggestions.

[2] The Local Rules require a motion to be filed when a party wants relief. LR 7.3. Cincinnati has not done so.

**B. Summary of Undisputed Facts Apart from Admissions**

Dashi operates a Japanese ramen restaurant at 415 E. Chapel Hill Street. Doc. 45-4 at p. 1 ¶ 2. The Cookery is a "restaurant incubator, culinary kitchen, and event venue" located at 1101 W. Chapel Hill Street. Doc. 45-1 at p. 1 ¶ 2. Nanasteak operates a steakhouse at 345 Blackwell Street. Doc. 45-2 at p. 1 ¶ 2. Ponysaurus operates a "brewery, taproom, and beer garden" at 219 Hood Street. Doc. 45-3 at p. 1 ¶ 2.

Cincinnati issued commercial property insurance policies to the plaintiffs before the COVID-19 pandemic and renewed those policies during and after the pandemic. Doc. 45-4 at p. 2 ¶ 4.[3] Each policy covers "accidental physical loss or accidental physical damage," including Business Income, Extra Expense, and Civil Authority coverage. *Id.* at pp. 47, 66, 100, 107.[4]

In March 2020, as a result of COVID-19 executive and municipal orders, the plaintiffs were forced to cease or severely curtail operations. *Id.* at p. 2 ¶¶ 6–7. Between April and June 2020, the plaintiffs submitted claims and proof-of-loss documentation to Cincinnati. Doc. 35 at ¶¶ 16, 18, 97; Doc. 37 at ¶¶ 16, 18, 97; Docs. 35-1 to 35-4. For example, Dashi "closed its doors to dine-in service in mid-March 2020." Doc. 45-4 at p. 2 ¶ 7. "Dashi submitted to Cincinnati detailed proof-of-loss documentation demonstrating the following business income losses for the initial months of closure:

---

[3] The parties have not identified any difference between the plaintiffs that is material to Court's decision on the plaintiffs' motion. Therefore, from this point onward, the Court cites only to evidence about Dashi as an example and stand-in for all four plaintiffs. All citations to the record are thus "e.g." citations unless otherwise specified.

[4] Page numbers are those designated by the ECF system.

March 2020: $87,683.54 in business losses . . . ; April 2020: $157, 276.96 in business losses; May 2020: $132,197.26 in business losses." *Id.* at p. 3 ¶ 8; *see* Doc. 35-1 at 1–3 (statements of losses); Doc. 37 at ¶ 18 (admitting receipt of plaintiffs' submissions).

In June 2020, Cincinnati issued substantively identical denial letters to the plaintiffs. Doc. 45-4 at pp. 296–304. Cincinnati made a company-wide decision that closing a business to stop the spread of COVID-19 did not trigger coverage. Doc. 45-5 at p. 2 ¶ 3, and p. 5. The denial letters identified several reasons there was no coverage, including that there was no physical loss. Doc. 45-4 at pp. 296–304. The denial letters did not reflect any individualized investigation of each plaintiff's particular claim. *Id.* at p. 3 ¶ 11.

Litigation ensued, and the parties agreed to a stay pending appeals in other cases involving the same coverage provision. Doc. 35 at ¶ 45; Doc. 37 at ¶ 45. In December 2024, the North Carolina Supreme Court held in *North State Deli* that materially identical policy language affords coverage for restaurants' COVID-19 related losses. It reasoned: "Because a reasonable policyholder in the restaurants' shoes could expect 'direct physical loss' to property, as used in this policy, to include the results of COVID-19-era government orders which affected the restaurants' use of any access to their physical property, and because the policy otherwise contains no exclusion for viruses, we construe the [policy] in favor of coverage." 386 N.C. at 735. It held "that this policy does cover the restaurants' alleged losses." *Id.*

Within two weeks of the *North State Deli* decision, the plaintiffs notified Cincinnati that the decision resolved the coverage dispute and asked Cincinnati to reopen

and resolve its claim consistent with that decision. Doc. 45-4 at p. 4 ¶ 13. Between December 2024 and May 2025, the plaintiffs "provided Cincinnati with updated claim documentation, including supplemental business income loss calculations, extra expense records, and loan interest documentation." *Id.* at p. 4 ¶ 14. On April 7, 2025, they sent Cincinnati a statement of "total damages for losses from 2020 to 2022, plus direct Covid expenses." Doc. 45-5 at p. 53.

Cincinnati did not make and to this day has not made any payment to any plaintiff. Doc. 45-4 at p. 4 ¶ 15. It has not identified any policy provision, exclusion, or factual distinction that would place any plaintiff's claim outside the scope of *North State Deli*. *Id.*

**C. Summary of Facts in Admissions**

After the *North State Deli* decision, Cincinnati continued to assert that the plaintiffs did not sustain "direct physical loss" as required for coverage. Doc. 45-5 at p. 11 ¶ 12. Cincinnati did not identify to the plaintiffs any "factual distinction material to coverage" or "policy provision materially different from the policy language addressed in *North State Deli* that would change the coverage analysis" for the plaintiffs' claims, *id.* at pp. 11–12 ¶¶ 14–15, or that would remove that plaintiffs' claims from the scope of the *North State Deli* holding. *Id.* at p. 17 ¶ 58; *see id.* at p. 14 ¶ 31.

Between December 2024 and May 2025, the plaintiffs "provided Cincinnati with updated claim documentation relating to [the plaintiffs'] business income losses and extra expenses," including "supplemental business income loss calculations" and "records of extra expenses incurred." *Id.* at pp. 10–11 ¶¶ 6–8. By that point, "Cincinnati had

received sufficient documentation . . . to evaluate [the plaintiffs'] business income and extra expense claims," and it "did not request any additional category of documentation from [the plaintiffs] that Cincinnati asserted was necessary to determine whether any portion of [the plaintiffs'] claims was payable." *Id.* at p. 14 ¶¶ 35–36.

After *North State Deli*, "Cincinnati did not offer to make any interim payment of amounts not reasonably in dispute on any Plaintiff's claim." *Id.* at p. 12 ¶ 20. "Cincinnati's refusal to pay any portion of [the plaintiffs'] claims after the *North State Deli* decision was not based on any ongoing investigation into facts material to coverage." *Id.* at p. 13 ¶ 26. Instead, "Cincinnati continued to adhere to the same categorical coverage position that it took in 2020 with respect to COVID-19 business interruption claims under the policies at issue." *Id.* at ¶ 28. The "reasons Cincinnati relied upon after the *North State Deli* decision to deny or refuse payment of Plaintiff's claims were the same reasons Cincinnati relied upon in its 2020 denial letters." *Id.* at p. 14 ¶ 37.

## II. Summary Judgment Standard

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In analyzing a summary judgment motion, courts "must construe all facts and reasonable inferences in the light most favorable to the nonmoving party." *Bandy v. City of Salem*, 59 F.4th 705, 709 (4th Cir.

2023). The moving party has the initial burden of demonstrating the absence of any material issue of fact; once the moving party meets its initial burden, the non-moving party must come forward with evidentiary material demonstrating the existence of a genuine issue of material fact requiring a trial. *Id.* at 709–10; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

## III. Declaratory Relief and Breach of Contract

The plaintiffs seek a declaratory judgment determining "that their respective policies cover loss or damage resulting from the coronavirus pandemic," and "that the relevant governmental orders . . . constituted a prohibition of access as defined by their respective policies, sufficient to trigger coverage." Doc. 35 at ¶¶ 110–11. The plaintiffs also contend that Cincinnati breached the policies by failing to cover the plaintiffs' valid business income loss claims. *Id.* at ¶ 115.

The elements of breach of contract are (1) the existence of a contract and (2) a breach of the terms of that contract. *Poor v. Hill*, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000). The parties agree that the policies are contracts, so their dispute turns on the element of breach.

The plaintiffs, as the insureds, have "the initial burden of bringing [themselves] within the insuring language of the policy." *John S. Clark Co., Inc. v. United Nat'l Ins. Co.*, 304 F. Supp. 2d 758, 764 (M.D.N.C. 2004) (cleaned up). The North Carolina Supreme Court determined in *North State Deli* that the same policy language at issue here provides coverage for the kinds of losses sustained by the plaintiffs. 386 N.C. at 735,

742–48. The plaintiffs have shown that their losses fall within the coverage language of the policy. Doc. 45-4 at pp. 2–4 ¶¶ 3–10, 12–16; *see* Doc. 45-4 at pp. 47, 66, 100, 107.

Cincinnati does not contend otherwise, instead hinting only that other provisions in the policy preclude or exclude coverage. But hints are not enough; once the plaintiffs bring their losses within policy language, "the burden then shifts to the insurer to prove that a policy exclusion excepts the particular injury from coverage." *Alliance Mut. Ins. Co. v. Dove*, 214 N.C. App. 481, 483, 714 S.E.2d 782, 784 (2011) (cleaned up); *accord DENC, LLC v. Phila. Indem. Ins. Co.*, 421 F. Supp. 3d 224, 228 (M.D.N.C. 2019).

Cincinnati suggests that summary judgment on the declaratory relief and breach of contract claims is not warranted because "[t]here are multiple additional coverage defenses available to Cincinnati beyond the 'direct physical loss or damage' issue addressed by *North State Deli*." Doc. 53 at 6. It mentions in passing that "Pollution Exclusions, Loss of Use provisions, and Civil Authority coverages have not been evaluated in the context of this lawsuit." *Id.* But Cincinnati does not direct the Court's attention to those exclusions or explain why they apply despite *North State Deli*, nor does it offer any evidence to support its conclusory argument. Such perfunctory arguments are insufficient to raise a disputed question of material fact.

Moreover, *North State Deli* addressed pollution exclusions and loss of use and civil authority provisions, and it held that those provisions did not preclude coverage. For example, *North State Deli* recognized that "excluded Causes of Loss" include "pollutants of certain kinds," and it held that "viruses or contaminants are not excluded." 386 N.C. at 738; *see id.* at 740, 746. It also addressed in detail "loss of use" and "orders

by government authorities" as related to its coverage determination. *Id.* at 734, 739, 743; *see id.* at 744–45, 748. In its superficial briefing, Cincinnati does not mention these aspects of the decision in *North State Deli*, much less proffer reasons why those holdings do not apply here.

Absent any argument by Cincinnati addressing these aspects of the *North State Deli* or addressing any substantive reason why the policies do not provide coverage, this Court has no obligation to do the work Cincinnati has chosen not to do. It is not the Court's job to undertake the analysis and legal research needed to support such a perfunctory argument.[5] The plaintiffs' evidence and the decision in *North State Deli* establish that there is coverage for the plaintiffs' claims, and speculation about other possible coverage exclusions does not create a genuine issue of material fact. The plaintiffs are entitled to summary judgment.

Cincinnati also contends that there are issues of fact remaining about the calculation of damages. Doc. 53 at 4, 7–8; *see also* Doc. 53-1 ¶ 10-12 (testimony by counsel that Cincinnati requested "substantive documentation to support their single line-item claims for damages reflected in Plaintiffs' April 7, 2025 letter," and that "Cincinnati did not receive any substantiation of the claimed damages amounts from Plaintiffs from

---

[5] *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978); *Lab'y Corp. of Am. Holdings v. Kearns*, 84 F. Supp. 3d 447, 460 (M.D.N.C. 2015) (quoting *Hayes v. Self–Help Credit Union*, No. 13-CV-880, 2014 WL 4198412, at *2 (M.D.N.C. Aug. 22, 2014)); *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1320 n.3 (Fed. Cir. 2005) (refusing to address an undeveloped argument raised in a footnote); *Hughes v. B/E Aerospace, Inc.*, No. 12-CV-717, 2014 WL 906220, at *1 n.1 (M.D.N.C. Mar. 7, 2014) ("A party should not expect a court to do the work that it elected not to do."); *Cathey v. Wake Forest Univ. Baptist Med. Ctr.*, 90 F. Supp. 3d 493, 509 (M.D.N.C. 2015) ("It is not the court's job to undertake the analysis and legal research needed to support such a perfunctory argument.").

April 7, 2025 until July 9, 2026"). But that is no defense to liability. The plaintiffs agree that further proceedings are necessary to determine damages for breach of the policies, Doc. 46 at 14, 19, and the motion for summary judgment is directed only to liability issues. *See* Doc. 45 at 2.

The plaintiffs' motion for summary judgment on its declaratory judgment and breach of contract claims will be granted. Damages will be resolved at trial.

## IV. Breach of Implied Covenant of Good Faith and Fair Dealing

"In every contract there is an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement." *Bicycle Transit Auth., Inc. v. Bell*, 314 N.C. 219, 228, 333 S.E.2d 299, 305 (1985) (cleaned up). To recover for breach of the implied covenant of good faith and fair dealing, a plaintiff must prove that the other party breached the contract and "took action which injured the right of the other to receive the benefits of the agreement, thus depriving the other of the fruits of the bargain." *McDonald v. Bank of N.Y. Mellon Tr. Co., Nat'l Ass'n*, 259 N.C. App. 582, 586–87, 816 S.E.2d 861, 864 (2018) (cleaned up).

Ordinarily, such a claim is subsumed within the breach of contract claim. *See, e.g., Ada Liss Grp. v. Sara Lee Corp.*, No. 06-CV-610, 2010 WL 3910433, at *14 (M.D.N.C. Apr. 27, 2010). But it can provide a separate basis for recovery in the insurance context if there is a bad faith refusal to pay and aggravating or outrageous conduct. *See, e.g., Michael Borovsky Goldsmith LLC v. Jewelers Mut. Ins. Co.*, 359 F. Supp. 3d 306, 314 (E.D.N.C. 2019) (collecting cases); *see also Murray v. Nationwide*

*Mut. Ins. Co.*, 123 N.C. App. 1, 17, 472 S.E.2d 358, 367 (1996) (discussing punitive damages for tortious breach of contract in an insurance case).

The undisputed facts are sufficient to establish Cincinnati's liability for a claim of breach of the implied covenant of good faith and fair dealing. As the Court has made clear in previous orders, this claim is limited to Cincinnati's conduct since the decision by the North Carolina Supreme Court in *North State Deli*. *See, e.g.,* Doc. 42 at 1. Before the decision in that case, reasonable minds could differ over the meaning of the policy language at issue and up to that point there was no breach of the duty of good faith in the way Cincinnati initially dealt with the plaintiffs' claims. *See* Doc. 34 at 4–5. But once that case was decided, the landscape changed.

On the element of bad faith refusal to pay, it is undisputed that after the decision in *North State Deli*, Cincinnati had no legitimate and honest disagreement over coverage. Cincinnati did not identify any policy provision or factual distinction that would place the plaintiffs' claims and alleged losses outside the scope of *North State Deli* or identify any other provision justifying its refusal to pay any amount. *E.g.,* Doc. 45-4 at p. 4 ¶ 15; Doc. 45-5 at pp. 11–12 ¶¶ 14–18. Even now, well into the litigation and over 18 months after the Supreme Court ruled that identical language provided coverage for the kinds of losses the plaintiffs here have experienced, Cincinnati has provided no clear explanation or justification for its ongoing refusal to acknowledge its coverage obligations, despite the holding in *North State Deli*. *See* 386 N.C. at 735 (stating "this policy does cover the restaurants' alleged losses").

Bad faith further is demonstrated by the nature of communications with the plaintiffs, based upon the admissions in the record. After the *North State Deli* decision, Cincinnati "*continued to assert* that the plaintiffs did not sustain 'direct physical loss' as required for coverage." Doc. 45-5 at p. 11 ¶ 12 (emphasis added). "Cincinnati *continued to adhere* to the same categorical coverage position that it took in 2020 with respect to COVID-19 business interruption claims under the policies at issue." *Id.* at p. 13 ¶ 28 (emphasis added). The "reasons Cincinnati relied upon after the *North State Deli* decision to deny or refuse payment of Plaintiff's claims *were the same reasons* Cincinnati relied upon in its 2020 denial letters." *Id.* at p. 14 ¶ 37 (emphasis added). These continuing denials of coverage without explanation after *North State Deli* show a lack of "honest disagreement or innocent mistake," and establish the bad faith element of the claim. *Topsail Reef Homeowners Ass'n v. Zurich Specialties London, Ltd.*, 11 F. App'x 225, 239 (4th Cir. 2001).

Cincinnati suggests that there are genuine issues of material fact on this claim because "Cincinnati still has valid coverage defenses to the claim." Doc. 53 at 7; *see id.* at 9. But it has made no showing to support this contention, offering neither evidence nor legal argument. *See* Fed. R. Civ. P 56(c) (requiring a party at summary judgment to cite to particular evidence and to show that the evidence creates a disputed question of material fact). It has presented no evidence that it communicated to any plaintiff a good faith and specific argument that any other policy provision, exclusion, or factual distinction places any plaintiff's claim outside the scope of *North State Deli*. Doc. 45-4 at p. 4 ¶ 15; Doc. 45-5 at pp. 11–12 ¶¶ 14–18. In its summary judgment brief, it has not

cited any evidence supporting the reasons given in its pre-*North State Deli* letters denying coverage or made any coherent legal argument that there is no coverage. Fed. R. Civ. P. 56(c); *see* discussion, *supra* at pp. 9–11.

A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading," but rather must "set forth specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 n. 11 (1986) (cleaned up); *see* Fed. R. Civ. P. 56(c); *Matsushita,* 475 U.S. at 586–87 (holding that, once motion for summary judgment is properly made and supported, opposing party bears burden of showing, by means of affidavits or other verified evidence, that genuine dispute of material fact exists). Cincinnati's conclusory assertion that it "still has valid coverage defenses," Doc. 53 at 7, is nothing more than "unsupported speculation" and is insufficient to create a genuine issue of material fact. *Bouchat v. Balt. Ravens Football Club, Inc*., 346 F.3d 514, 522 (4th Cir. 2003) (cleaned up).

The undisputed evidence also establishes the requisite aggravating conduct element of the claim. Essentially, the plaintiffs' evidence shows that since the decision in *North State Deli*, Cincinnati has stonewalled the plaintiffs without offering any real reason for their ongoing refusal to acknowledge their coverage obligations. It made a blanket company-wide decision to deny all coronavirus-related business interruption claims without conducting an individual investigation into such claims, and without changing its position at all after *North State Deli*. Doc. 45-4 at p. 4 ¶ 15; Doc. 45-5 at pp. 13–14 ¶¶ 26, 28, 37.

The plaintiffs have offered uncontradicted evidence that they had to cancel events, reduce staff, and close in-person dining as a result of the pandemic. *E.g.,* Doc. 45-4 at p. 2 ¶ 6–7. Despite admitting that it received documented claims for loss in 2020, Doc. 37 at 10, Cincinnati has made no payment to any plaintiff, partial or otherwise. *See, e.g.* Doc. 45-4 at p. 4 ¶ 15. While it has offered conclusory testimony that it asked for undefined "substantiation" of plaintiffs' claimed damages as set out in the plaintiffs' April 7, 2025, letter in order to evaluate the claim, Doc. 53-1 ¶ 11, it does not offer any contradiction of the plaintiffs' evidence of the amounts lost early in the pandemic as submitted with their 2020 claim.[6] Nor has it offered any evidence to dispute the plaintiffs' testimony that after the decision in *North State Deli*, they submitted "updated claim documentation, including supplemental business income loss calculations, extra expense records, and loan interest documentation." *E.g.,* Doc. 45-4 at p. 4 ¶ 14. The combination of lack of communication of a valid basis to deny coverage after *North State Deli*, and the failure to offer even any partial payment based upon documentation received in 2020 establishes aggravating conduct.

Cincinnati contends there is no evidence of a valid claim because plaintiffs are seeking "two years of damages when only a maximum of one year is permitted by the Policy." Doc. 53 at 7; *see id*. at 4 (stating the "alleged damages figures represent amounts that are double the amount that could be recovered based on the plain language of the Policy"). It also maintains there is an honest disagreement over the "extent of

[6] There is nothing indicating that Cincinnati even submitted discovery requests in this case seeking "substantiation" of plaintiffs' losses.

coverage," and it disputes the plaintiffs are "entitled to the full payment of all claimed losses, whether substantiated or not." *Id.* at 8–9. But its contentions about the extent of coverage limits are as conclusory as their contentions that there is no coverage. It does not address, or even note, *North State Deli's* discussion of the "three disjunctive alternatives" for the end date of a "period of restoration." 386 N.C. at 744. Nor does it address when such a "period of restoration" begins, *id.*, much less explain how these provisions apply in the undisputed context here of layered COVID-19 shutdowns and reopenings. *E.g.* Doc. 45-4 at pp. 2–4 ¶¶ 7–9, 16. Cincinnati does not explain, either with evidence or legal argument, why the documentation submitted by plaintiffs was insufficient to support even a partial payment.

In sum, the plaintiffs have shown that Cincinnati had no legitimate and honest disagreement over coverage, following *North State Deli*; that despite this on-point decision by the state Supreme Court, it refused to pay any of the plaintiffs' covered losses; that this breach of contract forced the plaintiffs to again resort to litigation in this re-filed action to obtain the coverage to which it is contractually entitled; and that it has stonewalled the plaintiffs' efforts to obtain fair compensation for their covered losses despite the binding law set forth in *North State Deli*. These constitute sufficiently aggravating conduct to establish a claim for breach of implied covenant.

The plaintiffs' motion for summary judgment on liability for the breach of the implied covenant of good faith and fair dealing will be granted.

## V. Unfair and Deceptive Trade Practices Act

The plaintiffs contend that Cincinnati violated the Unfair and Deceptive Trade Practices Act by not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear, particularly in light of the *North State Deli* opinion. Doc. 35 at ¶ 127; Doc. 46 at 15–16. It has offered evidence to support that contention, and Cincinnati again offers no evidence that it has made a good faith effort to equitably settle the plaintiffs' claims.

The elements of an unfair and deceptive trade practices claim under N.C. Gen. Stat. § 75-1.1 are: (1) the defendant engaged in an unfair or deceptive act or practice, (2) which was in or affecting commerce, and (3) which proximately caused injury to the plaintiff. *RD & J Props. v. Lauralea-Dilton Enters., LLC*, 165 N.C. App. 737, 748, 600 S.E.2d 492, 500 (2004). "Although it is a question of fact whether the defendant performed the alleged acts, it is a question of law whether those facts constitute an unfair or deceptive trade practice." *Id.* The acts listed in N.C. Gen. Stat. § 58-63-15(11) are per se unfair and deceptive. *See Gray v. N.C. Ins. Underwriting Ass'n*, 352 N.C. 61, 71, 529 S.E.2d 676, 683 (2000); *see also Barbour v. Fidelity Life Ass'n.*, 361 F. Supp. 3d 565, 573 (E.D.N.C. 2019).

Under § 58-63-15(11)(f), it is an unfair insurance practice to "not attempt in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear." Here, the decision in *North State Deli* made liability on the claims reasonably clear, for the reasons stated, *supra* at pp. 5, 9–11. Cincinnati has not explained any basis for contesting liability after *North State Deli*, not to the plaintiffs and

not to the Court. The plaintiffs' evidence is uncontradicted that Cincinnati has not made even a partial payment, and beyond emails from counsel indicating a willingness to discuss settlement, Cincinnati has offered no evidence that it has followed through on that purported willingness with actual good faith attempts to promptly settle the plaintiffs' claims.

Summary judgment to the plaintiffs on this *per se* basis for liability under § 75-1.1 is warranted.

## VI. Conclusion

The plaintiffs have demonstrated the absence of any genuine issue of material fact as to liability on their claims for declaratory relief, breach of contract, breach of implied covenant, and unfair and deceptive trade practices. Summary judgment will be granted to the plaintiffs. Further proceedings are required to determine the amount of damages.

Because a motion for attorneys' fees is highly likely to be filed at some point, *see* Doc. 35 at p. 44 (requesting attorneys' fees pursuant to N.C. Gen. Stat. § 75-16.1), the Court suggests that any and all future settlement demands and offers be made in writing, so as to reduce any disputes about when there was or was not an unwarranted refusal to settle.

It is **ORDERED** that:

1. The plaintiffs' motion for summary judgment, Doc. 45, is **GRANTED**.
2. The plaintiffs are entitled to a declaratory judgment establishing coverage for their losses; the parties shall meet and confer about the form of such judgment and may submit proposed declaratory judgments

for the Court's consideration via email to the case manager.

3. The evidence shows without dispute that Cincinnati has breached the insurance contracts with the plaintiffs, that it has breached the implied covenant of good faith and fair dealing, and that it has committed unfair trade practices.
4. Liability issues are resolved in favor of the plaintiffs and the upcoming trial will be limited to a determination of the plaintiffs' damages.

This the 3rd day of September, 2026.

UNITED STATES DISTRICT JUDGE